<u>**NOT FOR PUBLICATION**</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| JOHN J. BUDZASH, | ) |
| Plaintiff, | ) |
| v. | ) Civil Action No. 08-2583 (GEB) |
|  | ) **MEMORANDUM OPINION** |
| HOWELL TOWNSHIP, PATRICIA HOOVER, JAMES BURDICK, CHRISTIAN JACKSON, ROBERT GREITZ, and RICHARD BJORNSEN, | ) |
| Defendants. | ) |

<u>**BROWN, Chief Judge**</u>

This matter comes before the Court upon the Motion to Dismiss of the defendants Howell Township, Patricia Hoover, James Burdick, Christian Jackson, and Robert Greitz ("the Howell Township Defendants") (Doc. No. 35) and the Motion to Dismiss of the defendant Richard Bjornsen ("Defendant Bjornsen") (Doc. No. 36). The Court has reviewed the parties' submissions and decided the motions without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons that follow the Court will grant the Howell Township Defendants' Motion to Dismiss and will grant Defendant Bjornsen's Motion to Dismiss.

**I.   BACKGROUND**

This matter involves Plaintiff's allegation that a conspiracy exists against him in the town in which he lives due to his association with an African-American individual named Tony

Fulton.  The Court dismissed in its entirety Plaintiff's First Amended Complaint (Doc. No. 13) on May 11, 2009 (Order, May 11, 2009; Doc. No. 30).  Plaintiff's Second Amended Complaint is the subject of these Motions to Dismiss.

Plaintiff states in his Second Amended Complaint that Defendant Bjornsen, who is Plaintiff's neighbor, is friends with Defendants Burdick and Hoover, who work for the Howell Township Code Enforcement office.  Plaintiff states that Defendant Jackson and Defendant Bjornsen have made racially derogatory remarks and that in 2003, Plaintiff "overheard" Defendant Jackson tell Defendant Burdick that he intended to run Tony Fulton out of town.  (Id. at ¶¶ 29, 30.)  Plaintiff states that on or about August 20, 2002, Defendant Bjornsen saw Tony Fulton on Plaintiff's property, and as a result, contacted Defendant Burdick who went to Plaintiff's property to inspect it.  (Id. at ¶ 32.)  This inspection resulted in a notice of violation. (Id.)  Plaintiff states that while he made no changes to any condition on his property, on or about September 3, 2002, he "received a notice that the violation had been abated."  (Id.)  Plaintiff maintains that on or about August 12, 2003, Defendant Bjornsen again saw Tony Fulton on Plaintiff's property and thereafter, Defendant Burdick "issued a junk vehicle notice to Plaintiff." (Id. at ¶ 33.)  Plaintiff states that between August 12, 2003, and November 12, 2003, "Defendant Burdick issued 12 summons to Plaintiff for violations of code."  (Id.)

Plaintiff commenced litigation regarding the first twelve notices of violation that he received in 2003.  (Id. at ¶ 36.)  Plaintiff asserts that he "was forced to appear eighteen (18) times at the Howell Township Municipal Court to answer for the 12 alleged violations of code."  (Id. at ¶ 37.)  Plaintiff states that "Judge Allen S. Kaplan found [him] guilty of all 12 charges, and merged them into three counts for imposition of sentence."  (Id.)  However, following Plaintiff's

timely appeal, "[o]n or about May 26, 2006, the Monmouth Superior Court [sic] reversed all but one of the alleged violations against the Plaintiff" and the judge "stated the summons were retaliatory in nature." (Id.) Plaintiff states he filed a Notice of Tort with Howell Township on August 21, 2006. (Id.)

Plaintiff states that with respect to the 2003 notices of violation, Plaintiff "made several efforts to receive discovery" but in response, he received: (1) "[e]mpty envelopes from Howell Township;" (2) "[t]otally black and illegible photocopies of photographs allegedly depicting proof of alleged Code Violations;" (3) "[v]ague responses and refusal to provide the proper Ordinance;" and (4) "[a] denial of all requests to receive information under the Open Public Record Act despite numerous proper requests." (Id. at ¶ 41.)

In addition, Plaintiff asserts that the condition of Defendant Bjornsen property is also in violation of town ordinances due to the "junk" on it. (Id. at ¶ 22.) He states that he also requested assistance when Defendant Bjornsen "dug a drainage ditch onto Plaintiff's property," but Howell Code Enforcement did not take any action. (Id. at ¶¶ 23, 24.)

Plaintiff also states that he learned in May 2009 that between 2003 and 2005, Defendants Hoover and Burdick approached neighbors regarding the code violations they alleged on Plaintiff's property and told these neighbors that "they had proof that Tony Fulton and Plaintiff were engaging in code violations;" that the neighbors should call them "if they saw Plaintiff with Tony Fulton;" that "they needed to issue warning of Code Violations in an attempt to make it appear that they were not singling out Plaintiff" but "no follow up from code enforcement occurred;" and that they would withhold Certificates of Occupancy and prosecute them for code violations "unless they falsely testify that Plaintiff had told them he had taken pictures of

3

[Defendant] Hoover in her backyard, in an attempt to have Plaintiff immediately arrested for stalking." (Id. at ¶ 44.)

Plaintiff also states that in November 2004, he "returned home and observed Defendant Bjornsen running from a 55 gallon steel drum, which had been placed on Plaintiff's property by someone other than Plaintiff." (Id. at ¶ 45.)  Plaintiff states that there was a fire that he had to extinguish, and he refused to permit the Howell Fire Department onto his property, but Defendant Jackson who was present "entered onto Plaintiff's property [and] ran around back in pitch black and directly to where the drum was located in spite of supposedly never being on Plaintiff's property before." (Id.)

Plaintiff notes that in February 2007 he filed a complaint against Defendant Bjornsen for harassment.  Plaintiff states that as he was leaving the police station where Defendant Hoover observed the filing of the complaint, a Howell Township police officer stopped Plaintiff and charged Plaintiff with failing to maintain his lane. (Id. at ¶ 46.)

Plaintiff asserts that in March 2008, Defendant Bjornsen again saw Tony Fulton on Plaintiff's property, and thereafter, Defendant Burdick "appeared at Plaintiff's residence." (Id. at ¶ 34.)  In addition, Plaintiff states that in or about July 2008, Defendant Jackson issued a notice of violation to Plaintiff for violation of Howell Township's soil removal ordinance. (Id.)  With respect to the 2008 soil removal ordinance violations, Plaintiff states that the hearing for the matter was rescheduled several times, and was moved from the Howell Municipal Court to the "[c]ourt in Freehold due to a conflict." (Id. at ¶ 38.)  After several dates that were rescheduled, Plaintiff on or about May 26, 2009, appeared in court in Freehold but "no one for Howell Township appeared," and "[n]one of the Howell witnesses subpoenaed by Plaintiff appeared"

either, and when "Plaintiff contacted the Howell Township Court Clerk" he "was informed that the Howell District Attorney had cancelled the matter at the last minute." (Id. at ¶ 38.) Plaintiff argues that the ordinance under which he was cited "has nothing to do with landscaping or filling," and that the Howell Township Defendants knew or should have known that it was inapplicable. (Id.)

Plaintiff alleges that given these facts, the Howell Township Defendants engaged in selective enforcement of the Township's code, and specifically ignored the conditions of Defendant Bjornsen's property. (Id. at ¶¶ 48, 49.) Plaintiff further alleges that Defendant Bjornsen between 2006 and 2008 has engaged in the following conduct: (1) "[t]hrowing various debris and rubbish on Plaintiff's property;" (2) "[e]ntering onto the Plaintiff's property and cutting tree branches;" (3) "[t]aking pictures of Plaintiff's guests as they entered onto Plaintiff's property;" (4) "[d]riving his pick-up truck on to Plaintiff's property;" (5) "[c]ontinued to this day to use and maintain a drainage ditch he dug in or around 2004 on his property without permission . . . causing damage to Plaintiff's property;" (6) "[s]igning various false criminal complaints against Plaintiff;" (7) "[f]ailing to return a stolen camera;" (8) "[p]erisistently entering on the Plaintiff's property without permission;" and (9) "[e]ncouraging his guests and invitees to trespass onto Plaintiff's property." (Id. at ¶ 55.)

Plaintiff filed his initial complaint in this matter on May 27, 2008. (Doc. No. 1.) An Amended Complaint was filed on November 14, 2008. (Doc. No.13.) The Court addressed the Defendants' Motions to Dismiss thereafter, and on May 11, 2009, ordered that the motion be dismissed in its entirety and granted Plaintiff leave to amend his complaint in accord with the Court's decision. (Order, May 11, 2009; Doc. No. 30.) Plaintiff filed this Second Amended

5

Complaint on June 1, 2009, and alleges the following causes of action: (1) violation of Plaintiff's civil rights, in violation of 42 U.S.C. § 1983 and the New Jersey Constitution ("Count One"); (2) conspiracy to violate Plaintiff's civil rights, in violation of 42 U.S.C. § 1985(2) and (3) ("Count Two"); (3) discrimination, in violation of the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §10:5-1, et. seq. ("Count Three"); (4) malicious prosecution ("Count Four");[1] (5) negligent hiring and supervision ("Count Five"); (6) intentional infliction of emotional distress ("Count Six"); (7) trespass to land ("Count Seven").  (Id. at ¶¶ 56-85.)

## II.   DISCUSSION

### A.   Defendants' Motions to Dismiss[2]

#### 1.   The Parties' Arguments

In support of their Motion to Dismiss, the Howell Township Defendants argue that Plaintiff has failed to address the infirmities of his pleading, which previously led to the Court's dismissal of the Amended Complaint.  They argue that the Second Amended Complaint is frivolous and should be dismissed with prejudice.  With respect to Counts One and Two, the

---

[1] Plaintiff's cause of action alleging malicious prosecution is labeled as Count Six in the Second Amended Complaint, but is listed fourth in the order of causes of action. Likewise, the cause of action for negligent hiring and supervision is labeled as Count Seven, but is listed fifth in the Second Amended Complaint.  The same is true of the causes of action for intentional infliction of emotional distress and trespass to land.  The Court has re-labeled these causes of action as "Count Four" through "Count Seven" respectively for the purposes of this opinion.

[2] The Court notes that the Second Amended Complaint alleges a cause of action only against Defendants Bjornsen, Burdick, Jackson, Hoover, and Greitz and against Howell Township.  Therefore, any other person or entity listed on the docket as a defendant in this matter shall be terminated pursuant to the Court's order dated May 11, 2009.  (Doc. No. 30.)

Howell Township Defendants argue that they must be dismissed because there is a two year statute of limitations that is applicable. (Howell Twp. Defs.' Br. at 7; Doc. No. 35 at 17.) They also argue that Count Three should be dismissed based on the two year statute of limitations. (Id. at 14.) Further, they aver that Counts One and Two should be dismissed based upon the doctrine of qualified immunity. (Id. at 15.) They further argue that Counts One, Two, and Three should be dismissed as they fail as a matter of law. (Id. at 20-25.) The Howell Township Defendants further argue that Count Four must be dismissed with prejudice because Plaintiff cannot prove that all the elements to sustain such a claim have been met. (Id. at 25-26.) They also maintain that Count Five should be dismissed for failure to state a claim because once the other causes of action are dismissed, this cause of action must fail. (Id. at 27.) Likewise, with respect to Count Six, they aver that it should be dismissed because the acts alleged in the Second Amended Complaint do not rise to the level of "outrageous conduct." (Id. at 28.) They finally argue that the various other violations alleged should be dismissed and the Court should decline to exercise supplemental jurisdiction. (Id. at 29-30.)

      Defendant Bjornsen also asserts many of the same arguments as did the Howell Township Defendants. The Court, therefore, will only mention those that are different or that apply specifically to Defendant Bjornsen. He argues that Count One should be dismissed as it applies to him because he did not act under color of law. (Def. Bjornsen's Br. at 6; Doc. No. 36-4 at 12.) He further states that Count Two should be dismissed because Plaintiff is not a member of a protected class and because there is no evidence of a conspiracy. (Id. at 11-13.) Defendant Bjornsen maintains that the cause of action under the NJLAD should be dismissed because Plaintiff lacks standing to assert such a claim. (Id. at 16-17.) He points out that Count Five does

not appear to be asserted against him, but that to the extent that it is, it should be dismissed as he "is not alleged to have been an employee of Howell Township or had any involvement with any . . . hiring of employees." (Id. at 20.)

Plaintiff opposes these arguments and argues that the Second Amended Complaint should not be dismissed. (See Pl.'s Opp. Br. to Howell Twp. Defs' Mot.; Doc. No. 40; Pl.'s Opp. Br. to Bjornsen's Mot.; Doc. No. 41.)

### 2. Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the plaintiff, a court finds that plaintiff has failed to set forth fair notice of what the claim is and the grounds upon which it rests. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (citing Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint will survive a motion to dismiss if it contains sufficient factual matter to "'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570). The plausibility standard requires that "the plaintiff plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demands "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). Although a court must accept as true all factual allegations in a complaint, that tenet is "inapplicable to legal conclusions," and "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Id. (quoting Twombly, 550 U.S. at 555); see also Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). In evaluating a motion to dismiss, a court may consider only the complaint,

exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon those documents.  See Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

### 3. Statute of Limitations

In respect to the arguments concerning the statute of limitations as it applies to Counts One and Two, Plaintiff argues that he has alleged facts to suggest a continuing course of conduct, and therefore, argues that the relevant standard that should be applied is the continuing violations doctrine.  Defendants, on the other hand, argue that Plaintiff's claims are barred by the statute of limitations.  The statute of limitations for a §1983 action "is the state statute which limits actions for personal injuries" and in New Jersey, such an action "must be convened within two years of accrual of the cause of action."  Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989) (citation omitted); see also O'Connor v. City of Newark, 440 F.3d 125, 126-27 (3d Cir. 2006).  "Inasmuch as a claim pursuant to 42 U.S.C. § 1985(2) or 1985(3) is essentially an action in tort . . . the statutory limitation is likewise two years."  Cito, 892 F.2d at 25.  However, "[t]he continuing violations doctrine is an 'equitable exception to the timely filing requirement.'"  Cowell v. Palmer Twp., 263 F.3d 286, 292 (3d Cir. 2001) (citing West v. Philadelphia Elec. Co., 45 F.3d 744, 754 (3d Cir. 1995)).  Therefore, should the Court determine that the alleged conduct is a continuing practice, the "action is timely so long as the last act evidencing the continuing practice falls within the limitations period."  Cowell, 263 F.3d at 292 (citing Brenner v. Local 514, United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).  A court will recognize this doctrine's applicability to the case before it when the plaintiff establishes that

the alleged conduct is "more than the occurrence of isolated or sporadic acts" and after considering the following factors:

> (1) subject matter -- whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation; (2) frequency -- whether the acts are recurring or more in the nature of isolated incidents; and (3) degree of permanence -- whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate.

Cowell, 263 F.3d at 292 (citing West, 45 F.3d at 755 n.9). The third factor has been identified as the most important for a court's consideration. Id. Moreover, "[t]he focus of the continuing violations doctrine is on affirmative acts of the defendants." Id.

The Court will grant Defendants' Motions to Dismiss. The issue before the Court is whether the two-year statute of limitations applies, or conversely, whether Plaintiff has alleged a continuing violation. The date that the initial complaint was filed in this matter was May 27, 2008, and therefore, absent a continuing violation, the events which allegedly occurred more than two years prior to that date fall outside of the statutory period. Plaintiff has alleged that he was first seen standing with Tony Fulton in 2002, and that the citations were issued between August 12 and November 12, 2003. (Second Am. Compl. ¶33; Doc. No. 31.) He states that "he was forced to appear eighteen (18) times at the Howell Township Municipal Court to answer for the 12 alleged violations of the code." (Id. at ¶ 37.) He states that while addressing these citations in 2003, Howell Township and its employees failed to comply with discovery requests. (Id. at ¶ 41.) He further states that in November 2004, he encountered Defendant Bjornsen on his property, had to put out a small fire, and denied access to the Howell Township Fire Department. (Id. at ¶ 45.) Plaintiff states in the Second Amended Complaint that Judge Allen S. Kaplan in the

10

Howell Municipal Court "found the Plaintiff guilty of all 12 charges" on June 22, 2005. (Id. at ¶ 37.) Plaintiff appealed this decision. (Id.) Plaintiff points out that on May 26, 2006, the Monmouth County Superior Court "reversed all but one of the violations" and "stated the summons were retaliatory in nature." (Id.)

This set of circumstances certainly put Plaintiff on notice about a possible cause of action. Therefore, the issue is whether the events that Plaintiff cites that occurred between May 27, 2006 and May 27, 2008, are "isolated, intermittent acs" or instead a continuation of a "persistent, on-going pattern." Cowell, 263 F.3d at 294 (citaiton and internal quotes omitted). Accordingly, the Court must consider "whether the violations constitute the same type of discrimination, tending to connect them in a continuing violation;" "whether the acts are recurring or more in the nature of isolated incidents;" and "whether the act had a degree of permanence which should trigger the plaintiff's awareness of and duty to assert his/her rights and whether the consequences of the act would continue even in the absence of a continuing intent to discriminate." Id.

Plaintiff states that the following events occurred during the statutory period:

34. In or about March 2008, Defendant Bjornsen observed Tony Fulton on the Plaintiff's property.

    a. Following this observation, Defendant Bjornsen contacted Defendant Burdick, who appeared at Plaintiff's residence.

    b. In or about July 2008, Plaintiff was issued a violation of code by Defendant Jackson for allegedly violating Howell Township's soil removal ordinance.

    c. Notice was signed by William Ninziato with CC to Thomas Savino and Engineer, and CC to Defendant Jackson who brought it to his attention.

. . . .

11

38. With regard to the 2008 alleged soil removal violations:

   a. A summons was signed/issued on or about January 16, 2009 and a hearing scheduled for February 4, 2009 at 12:30pm.  Plaintiff made appearance at the Howell Township Municipal Court but was informed the matter had been rescheduled.

   b. On February 5, 2009, Plaintiff received a notice from the Howell Township Municipal Court dated February 2, 2009, marked by the Howell Township postal meter February 3, 2009 indicating that the February 4, 2009 hearing had been rescheduled to February 11, 2009.

   c. On February 11, 2009, Plaintiff appeared at the Howell Township Municipal Court.  While awaiting this hearing Plaintiff was informed by a police officer that his matter would be moved to the Court in Freehold due to a conflict.

   d. On March 18, 2009, Plaintiff received notice from the Howell Township Court advising that the matter was rescheduled for May 5, 2009.

   e. On April 17, 2009, Plaintiff received notice from the Howell Township Court advising that the matter was rescheduled for May 26, 2009.

   f. On May 26, 2009, Plaintiff attended Court in Freehold Township.  None of the Howell witnesses subpoenaed by Plaintiff appeared and no one from Howell Township appeared.  Plaintiff contacted the Howell Township Court Clerk and was informed that the Howell Township District Attorney had cancelled the matter at the last minute.  As the Plaintiff was the only individual to appear for this hearing it is reasonable to infer he was the only individual not given notice of the cancellation of the hearing.

   . . . .

46. In or about February 2007, Plaintiff filed a Complaint with the Howell Township Police Department against Defendant Bjornsen for various acts of harassment.

   a. Defendant Hoover was present during the filing of the Complaint.

   b. Upon information and belief, Defendant Hoover contacted Defendant Burdick.

   c. Shortly after leaving the station, Plaintiff noticed an odor of antifreeze and stopped to check the smell in a paved driveway on public property to

        investigate. While performing this investigation, Defendant Burdick drove past Plaintiff.

    d.    After leaving the public property and pulling back on to the street, Plaintiff was stopped and charged by a Howell Township Police Officer and questioned why he was on that property then charged Plaintiff for "failure to maintain lane" when in fact he was pulling over for the police and saw the narrow road was not safe to stop on so continued to a side street where he pulled over.

. . . .

55.    Between 2006 and 2008, Defendant Bjornsen has engaged in the following conduct:

    a.    Throwing various debris and rubbish onto Plaintiff's property, including but not limited to, tree branches, beer bottles, concrete blocks, rotted wood, various unknown chemicals;

    b.    Entering onto the Plaintiff's property and cutting tree branches;

    c.    Taking pictures of Plaintiff's guests as they entered onto Plaintiff's property;

    d.    Driving his pick-up truck on to Plaintiff's property;

    e.    Continued to this day to sue and maintain a drainage ditch he dug in or around 2004 on his property without permission and knowing it was not allowed, causing various damage to Plaintiff's property;

    f.    Signing various false criminal complaints against Plaintiff;

    g.    Failing to return a stolen camera which as of the present date has not been returned;

    h.    Persistently entering on the Plaintiff's property without permission;

    i.    Encouraging his guests and invitees to trespass onto Plaintiff's property.

(Second Amended Compl.; Doc. No. 31.)

With regard to the "subject matter" of these acts, the Court notes that they involve three

separate subjects.  The first involves a soil removal ordinance, the alleged violation of which is being addressed by a court in Freehold, New Jersey.  The second subject involves an apparent complaint that Plaintiff says he filed against Defendant Bjornsen, following which he was given a ticket by the police department for failing to maintain his lane.  And the third subject involves acts taken by Defendant Bjornsen.  This is not the same subject matter as that which was involved in the events that took place in 2003, namely, code violations issued by Howell Township for conditions on Plaintiff's property.

With regard to the "frequency" of the acts, there is no "specific standard for determining how close together the acts must occur to amount to a continuing violation. There is a definite break in the acts alleged following the 2003 litigation.  Therefore, while the acts alleged in 2002 and 2003 seem to have occurred with some frequency, and the acts that occurred between 2006 and 2008 have been alleged to have occurred with some frequency, during the interim Plaintiff has not alleged any frequency of actions that show a continued pattern.

Finally, with respect to the third and "most important" factor, the "degree of permanence" that "should trigger the plaintiff's awareness of and duty to assert his/her rights," the Court notes, as did the Cowell Court, the policy considerations to justify the need for a statute of limitations. "[T]he continuing violations doctrine should not provide a means for relieving plaintiffs from their duty to exercise reasonable diligence in pursuing their claims."  Cowell, 263 F.3d at 295 (citing Nat'l Adver. Co. v. City of Raleigh, 947 F.2d 1158, 1168 (4th Cir. 1991); Ocean Acres Ltd. Partnership v. Dare County Bd. of Health, 707 F.2d 103, 107 (4th Cir. 1983)).  Here, taking as true the facts alleged in the Second Amended Complaint, Plaintiff was aware in 2002 and 2003 that Howell Township and its employees issued citations that were, excluding one, without

merit.  Plaintiff was also aware that he had continual problems with his neighbor Defendant Bjornsen, and that Defendant Jackson and Defendant Burdick allegedly talked about running Plaintiff's friend Tony Fulton out of town.  Assuming that these actions in 2003 gave rise to a valid cause of action, the Court concludes that Plaintiff was aware of the wrongfulness of these actions and should have acted at that time and within the appropriate limitations period by filing a § 1983 claim.  For the purposes of this decision, the Court notes that if Plaintiff believes that the 2008 soil removal litigation warrants relief and forms a basis for a §1983 claim, then Plaintiff may bring a separate cause of action on that basis, so long as it complies with applicable statutes of limitations.  The Court, having appropriately considered the third factor as the most important of the three, accordingly dismisses Counts One and Two and concludes that the continuing violations doctrine is inapplicable.

       The Court also declines to extend supplemental jurisdiction for the state claims, enumerated in Counts Three through Seven.  Plaintiff has already been given the opportunity to amend his complaint, and therefore, the Court concludes that any other opportunity to amend would be futile.  See Maio v. Aetna, Inc., 221 F.3d 472, 500-01 n.19 (3d Cir. 2000).

### III.   CONCLUSION

       For the above reasons, the Court will grant the Howell Township Defendants' Motion to Dismiss and will grant Defendant Bjornsen's Motion to Dismiss. An appropriate form of order is filed herewith.

Dated: January 4, 2010

                                                            <u>s/ Garrett E. Brown, Jr.</u>
                                               GARRETT E. BROWN, JR., U.S.D.J.